IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Mary Fagnant, Brenda Dewitt-Williams and Betty Bey, as Power of Attorney for Brenda Dewitt-Williams, )<br><br>Plaintiffs, )<br><br>v. )<br><br>Kathryn Michelle Johnson, K-Mart Corporation, Kings Festival Corp., Inc. and Gator Investors, Inc., )<br><br>Defendants. ) | Civil Action No.: 4:11-cv-00302-RBH<br><br>**ORDER** |

The above-captioned Plaintiffs filed this action against the above-captioned Defendants in this Court's diversity jurisdiction, alleging several claims arising from South Carolina tort law. Defendants Gator Investors, Inc. ("Gator") and Kings Festival Corp. ("Kings")[1] filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Def. Gator Investors, Inc.'s Mot. for Summ. J., ECF No. 75. Subsequently, Defendant Kmart Corporation ("Kmart") filed its own motion for summary judgment, as well as a motion for leave to amend its answer to Plaintiffs' second amended complaint to add two cross-claims against Gator. ECF Nos. 88, 90. These three motions are now before the Court. The parties appeared before the Court for a May 9, 2013 hearing, and the motions were taken under advisement. After reviewing the parties' motions and briefs, and considering the parties' arguments and supporting evidence, the Court denies both Defendants' motions for summary judgment, as well as Kmart's motion for leave to amend its answer.

---

[1] At the hearing on the motions, the parties agreed to dismiss Kings from the action.

## FACTUAL BACKGROUND

This case arises out of a series of events that occurred on November 9, 2009, and that resulted in severe injuries to Plaintiffs Mary Fagnant and Brenda Dewitt-Williams in the parking lot of a Kmart store in Myrtle Beach, South Carolina.  Much of the background facts surrounding this incident were revealed in the deposition testimony of Shonta Dennison, a Kmart employee. Shonta Dennison Depo., ECF No. 87-1.  According to Dennison's testimony, she opened the store at approximately 8:00 a.m. and took her place at the customer service desk, located near the front door of the store. *Id.* at 15.  A little while later, Dennison observed a woman, later identified as Kathryn Johnson, approach another woman on a pay phone and try to get her attention. *Id.* at 18.  According to Dennison, "after the lady turned around and continued to talk on the, the payphone, [Johnson] tried to grab her purse." *Id.* at 18–19.  While the two women tussled over the purse, Dennison called the store's loss prevention office, opting to not immediately call 911. *Id.* at 19.  When her attempts to reach loss prevention over the phone failed, Dennison attempted to call for loss prevention over the store's loudspeaker. *Id.*  Ultimately, Johnson was unsuccessful in stealing the purse, left the payphone area, and walked further into the store. *Id.* at 19–20.

Dennison continued her efforts to reach loss prevention. *Id.*  The next time Dennison saw Johnson, Johnson was running with a purse and was being chased by Fagnant, who was yelling, "She stole my purse." *Id.*  Once the two were outside, Fagnant continued to yell, and they continued to fight over the purse. *Id.*  When they reached the parking lot, Johnson went to her vehicle. *Id.* Dewitt-Williams, who was nearby unloading the items she bought at the store, noticed the commotion and proceeded to assist Fagnant in retrieving her purse. *Id.*  During the confrontation with Johnson in the open doorway of Johnson's car, Johnson managed to start the car, put it in gear, and injured Fagnant and Dewitt-Williams with her vehicle as she sped from the parking lot.  Severe

injuries to both women resulted. *Id.* at 27-30. Dennison then ran outside to assist Dewitt-Williams and call 911 on her cell phone. *Id.* at 31. Once the Myrtle Beach Police Department was notified, there was an immediate response. Johnson was ultimately indicted on several counts, including assault and battery with intent to kill, purse snatching, and leaving the scene of an accident resulting in great bodily injury. She pled guilty before a South Carolina circuit court to three counts of leaving the scene of an accident resulting in great bodily injury, and she is currently serving her sentence in a state prison.

## DISCUSSION

### I. Summary Judgment Standard

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine dispute for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine dispute as to any material fact and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its

existence or nonexistence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id*. at 257. In determining whether a genuine dispute has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand a summary judgment motion. *Id*. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'n Satellite Corp*., 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## II. *Kmart's Motion for Summary Judgment*

Kmart filed a motion for summary judgment on February 28, 2013. Def. Kmart Corp.'s Mot. for Summ. J., ECF No. 88. In the motion, Kmart makes several arguments in support of its motion. First, it argues that it "did not have a duty to protect the Plaintiff given the facts of this case." Memo. in Supp. Def. Kmart Corp.'s Mot. for Summ. J. 8, ECF No. 88-1. Second, Kmart contends that, even if there was a duty, Plaintiffs have failed to present evidence showing that any action or inaction of Kmart was the proximate cause of Plaintiffs' injuries. *Id.* at 16. Third, Kmart contends that Plaintiffs were negligent in responding to the theft and that their negligence bars recovery against Kmart. *Id.* at 17-18. Finally, Kmart argues that the opinions of Plaintiff's expert witness, Howard B. Wood, should be excluded under the Federal Rules of Evidence. *Id.* at 19. Because the

exclusion of Wood's expert opinions affects the evidence that the Court must consider, the Court addresses Kmart's objections to Wood's expert opinions first.

### A. Plaintiffs' Expert Witness's Opinions are Proper

Kmart moves to exclude Wood's expert opinions pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993). Kmart argues that "Wood's proposed opinions fail to meet the requirements of Rule 702." Memo. in Supp. Def. Kmart Corp.'s Mot. for Summ. J. 19. Furthermore, Kmart contends that the opinion testimony "is unduly prejudicial given its limited probative value and should be excluded pursuant to Rule 403" of the Federal Rules of Evidence. *Id.*

Under Rule 702, expert testimony is admissible if it will assist the trier of fact and is (1) "based upon sufficient facts or data," (2) "the product of reliable principles and methods," and (3) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. As the United States Supreme Court has explained, evidence is admissible under Rule 702 if "it rests on a reliable foundation and is relevant." *Daubert*, 509 U.S. at 597. Because "expert witnesses have the potential to be both powerful and quite misleading," courts must "ensure that any and all [expert] testimony . . . is not only relevant, but reliable." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999); *Daubert*, 509 U.S. at 588, 595). "Rule 702 grants the district judge the discretionary authority . . . to determine reliability in light of the particular facts and circumstances of the particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999).

First, Kmart argues that "nothing in Wood's background suggests he is qualified to provide testimony about the security measures in place at a department store like Kmart." Memo. in Supp. Def. Kmart Corp.'s Mot. for Summ. J. 20. Specifically, it points out that Wood has never worked

for a retail store and is unfamiliar with Kmart's policies and procedures. In their response, Plaintiffs highlight Wood's qualifications as follows:

> Wood has a Bachelor of Science in Criminology from Florida State University and has completed U.S. Treasury Law Enforcement School, U.S. Secret Service Special Agent Training School, Technical Operations Briefing and Protection Research Seminar. Wood has over 35 years of experience in the security industry. Wood worked as a U.S. Secret Service Agent for many U.S. Presidents for numerous years, in which his duties included security surveys of buildings and parking lots.

Resp. in Opp. to Def. Kmart Corp.'s Mot. for Summ. J. 13, ECF No. 93. While it may be true that Wood has limited experience in *retail* security, these reasons do not render his testimony unhelpful to the jury. Plaintiffs have shown Wood's experience to be relevant to the question of whether Kmart could have prevented Plaintiffs' injuries from occurring and whether it had a duty to do so. Accordingly, the Court finds that Wood's experience in law enforcement and security, and as a security consultant qualify, him as an expert to testify about reasonable security measures a business can take to secure its premises from foreseeable criminal acts.

Second, Kmart maintains that Wood's opinions are unhelpful and not supported by the evidence. Memo. in Supp. Def. Kmart Corp.'s Mot. for Summ. J. 21–23. As to Wood's opinion (opinion 1) that the subject incident was foreseeable, Kmart emphasizes that the data analyzed showed that there had been no purse snatchings inside the store and that 90% of the crime in the area was shoplifting. As to Wood's opinion (opinions 3 and 5) that had Dennison followed Kmart policy and called law enforcement the incident would not have occurred, Kmart points out that Wood's understanding that ten minutes passed between the robbery attempt and the successful purse snatching is not supported by Dennison's testimony that it only took "30 seconds or a little more than that." Finally, as to Woods opinion (opinions 4 and 6) that Kmart did not provide

adequate security, Kmart notes the lack of a history of violent crime inside the store and "crimes of this type in the parking lot."

The Court finds Wood's opinions will assist the trier of fact and are adequately supported by the evidence. While the South Carolina Supreme Court has noted that "the presence or absence of prior criminal incidents is a significant factor in determining the amount of security required of a business owner," the court explained that "their absence does not foreclose the duty to provide some level of security if other factors support a heightened risk." *Bass v. Gopal, Inc.*, 716 S.E.2d 910, 915 (S.C. 2011). Wood analyzed volumes of reports of incidents occurring on the property, as well as CRIMECAST data. Therefore, his opinions regarding the amount of security required in Kmart's store and the parking lot outside of it have an adequate foundation given the facts of this case. Furthermore, Wood's opinions are based on the timeline of events as revealed by Dennison. As the Court discusses below, there is some ambiguity in the amount of time Kmart had to respond to the criminal activity. The Court thus does not find it improper for Wood to accept the inferences that favor Plaintiffs. Certainly, Defendants can cross-examine Wood on his opinions and any assumptions he may have made.

Finally, Kmart challenges Wood's opinions—specifically opinion 6 concerning proximate causation—on the basis that he provides inadmissible legal conclusions. Memo. in Supp. Def. Kmart Corp.'s Mot. for Summ. J. 24. Indeed, the phrase specifically used by Wood that "K-Mart's failure to provide reasonable security measures at the premises . . . was the proximate cause of the incident" is inappropriate. Howard B. Wood Expert Report 6–7, ECF No. 88-7. Generally, however, Wood's testimony is relevant to the issue of whether any security measures taken by Kmart (and also Gator) would have prevented Johnson from performing the criminal acts that led to Plaintiffs' injuries. Some testimony relevant to causation is unavoidable. Even the South Carolina

7

Supreme Court commented that "a determination of whether a business proprietor's security measures were reasonable in light of a risk will, at many times, be identified by an expert." *Bass*, 716 S.E.2d at 917.  But Plaintiffs should be cautioned that Wood must avoid the use of legal terms of art in conveying his opinions at trial. *See United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) ("The best way to determine whether opinion testimony contains legal conclusions, 'is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.' " (quoting *Torres v. Cnty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985))).  Such characterizations will be excluded.

In conclusion, the Court finds Wood is qualified to testify as an expert regarding reasonable security measures, that his opinions are sufficiently relevant and reliable, and that Rule 702 and *Daubert* are satisfied.[2]

### B.  Disputes of Material Facts Require Denial of Summary Judgment

Given the Court's ruling that Wood's expert opinions are proper under the Federal Rules of Evidence and *Daubert*, the Court will now consider Kmart's motion for summary judgment in light of those opinions.  As noted above, Kmart offers several arguments as to why summary judgment must be granted in its favor as a matter of law.  However, after reviewing the evidence presented in a light most favorable to Plaintiffs, the Court finds several genuine disputes of material fact.  For example, it is for the jury to determine the disputes in the amount of time Dennison waited to call 911, the extent of control Kmart had over the parking lot outside of its store, the foreseeability of the criminal activity that ultimately caused Plaintiffs' injuries, and the reasonableness of any security precautions that would have prevented them.

---

[2] Because the Court finds Wood's opinions relevant and helpful under Rule 702, the opinions' "probative value [cannot be] substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

"[A] business owner has a duty to take reasonable action to protect its invitees against the *foreseeable* risk of physical harm." *Bass*, 716 S.E.2d at 910.  Until 2011, South Carolina courts recognized the "imminent harm rule" to determine the extent of a business owner's "duty to protect patrons from violent acts of third parties."  Under the imminent harm rule, business owners have "a duty of reasonable care to protect" their patrons only if "they know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee." *Shipes v. Piggly Wiggly St. Andews, Inc.*, 238 S.E.2d 167, 169 (S.C. 1977).  Recently, however, the South Carolina Supreme Court, declaring the imminent harm rule "outdated" and criticizing it "as imposing too minimal a duty on business owners to protect patrons," modified the scope of duty in adopting the "balancing test." *Bass*, 716 S.E.2d at 913, 915.

" 'The balancing approach acknowledges that duty is a flexible concept, and seeks to balance the degree of foreseeability of harm against the burden of the duty imposed.' " *Id.* at 915 (quoting *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 901 (Tenn. 1996)).  The court reasoned that the purpose for the balancing test is to " 'encourage a reasonable response to the crime phenomenon without making unreasonable demands.' " *Id.* at 915-16 (quoting *McClung*, 937 S.W.2d at 902).  This approach, therefore, requires a determination of "(1) [whether] a crime is foreseeable, and (2) given the foreseeability, [what] the economically feasible security measures required to prevent such harm" are. *Id.* at 915.  Thus, it is within the context of this newly-adopted balancing test that the Court must assess the evidence in the record.

Kmart challenges Plaintiffs' case on three main grounds, arguing that it had no duty under *Bass*, that no reasonable juy could find that it could foresee the injuries that occurred, and that, regardless, each Plaintiff's negligence surpassed its own to the extent that each Plaintiff's claims are barred as a matter of law.  Kmart points to several facts it maintains are undisputed, but it highlights

Dennison's deposition testimony that only approximately thirty seconds passed between Johnson's

first, abandoned attempt at purse snatching and her getaway after stealing Fagnant's purse.

According to Kmart, nothing could have been done within that period of time to prevent injury to

Plaintiffs.

Specifically, Dennison's testimony was as follows:

> Q: How long a period of time are we talking from the time that you
> saw her trying to take the purse from the first lady on a payphone till
> you see the second older lady running behind her, trying to get a
> purse back?
> A: I would say it was, it was, *had to have been about 30 seconds or a*
> *little more than that, because it happened so fast*.

Dennison Depo. 21 (emphasis added).  Kmart's characterization of the evidence, however, gives

short shrift the somewhat-confusing deposition testimony Dennison gave later.   Dennison's

testimony suggests that there was more time to respond because more time passed from when

Dennison witnessed Johnson leaving fleeing from Fagnant and until the injuries to Plaintiffs.

Dennison testified to the following:

> Q: And, now, how long now are we talking about from the time that
> you saw Brenda come into the store—Well, let me back-up, check
> that.  How long are we talking about from the time that you saw the
> older white lady on the payphone and the younger white lady trying
> to take her purse till the time that you saw Brenda under the tire,
> being run over?  What period of time would you think elapsed?
> A: I think, all together, 20 to 25 minutes.
> Q: That long?
> A: From when Brenda walked in the store and everything happened?
> Q: Yes.
> A: Yes.
> Q: And how long from the time that you saw the older white lady on
> the phone, on the payphone, and the younger white lady trying to take
> her purse till you saw Brenda under the tire?
> A: I can't remember.  I don't know.  I don't know.

Dennison Depo. 30–31.

Dennison's later deposition testimony, when viewed in a light most favorable to Plaintiffs, shows that Dennison may have had *several minutes* to act (Plaintiffs' expert inferred or assumed up to ten minutes, Howard B. Wood Depo. 96, ECF No. 93-1).  Moreover, it shows that if Dennison had called 911 immediately after witnessing Johnson's initial, unsuccessful attempt to steal a purse, then law enforcement may have intervened and prevented Plaintiffs' injuries.  Indeed, there is evidence that a Myrtle Beach police officer responded in approximately one minute. *See* John Villines Expert Report 4, ECF No. 74-6.  It follows that if the jury finds Johnson and Plaintiffs were tussling in the parking lot for several minutes after they exited Kmart's store, then a causal link may be established.  Kmart's emphasis that the events took merely thirty seconds does not account for the entire timeline of events (of which there is a genuine dispute of material fact as to the time it took from Johnson's initial attempted crime to the point when Plaintiffs were injured), and Plaintiff has presented sufficient evidence of a causal chain.  This Court, of course, must view all inferences in a light most favorable to Plaintiffs.

Also relevant to the causation analysis is the foreseeability of the injury. *See, e.g.*, *Roddey v. Wal-Mart Stores E., LP*, 732 S.E.2d 635, 641 (S.C. Ct. App. 2012) (Short, J., concurring) (" 'Proximate cause requires proof of both causation in fact and legal cause.'  'Legal cause is proved by establishing foreseeability.' " (citations omitted)).  Kmart contends that no reasonable jury could find Plaintiffs' injuries (and the criminal activity that caused them) foreseeable.  The Court, however, disagrees.  Plaintiffs have presented sufficient evidence in the record to withstand summary judgment.  As noted above, South Carolina's supreme court has explained that an expert will most times be utilized to present evidence regarding reasonable security measures.  In light of *Bass*, which requires a balancing of the foreseeability of the injury and measures that could prevent harm, the foreseeability of any specific criminal activity or resulting injury is implied in the expert's

conclusions.  Here, for example, Plaintiffs have shown evidence that Dennison observed Johnson as

Johnson committed a crime and was being chased by Fagnant.  Moreover, Plaintiffs provided

evidence that immediately contacting 911 may have prevented the incident in the parking lot from

occurring.  Thus, it is reasonable to infer that a confrontation between Johnson, Fagnant, and a

bystander, such as Dewitt-Williams is "natural and probable." *Roddy*, 732 S.E.2d at 641.  And,

because the determination of whether a *duty* existed turns on the question of foreseeability, Kmart's

argument that it had no duty to act cannot prevail at summary judgment.  The bottom line is that

questions for the jury remain, and a denial of summary judgment is proper.

The Court, however, is left with the question as to whether Kmart had a duty arising from its

control of the parking lot where the incident giving rise to this action ultimately occurred.  While

Kmart argues that it did not have control of the parking lot—that the parking lot was a common area

under the control of Gator—Plaintiffs and Gator disputed the issue of control at the May 9 hearing.

Thus, there exists a question of fact as to who controlled the parking lot.  Indeed, the question of

who controlled the parking lot is a material fact in determining the existence of a duty to protect

patrons from the criminal activity of third parties. *Cf. Jackson v. Swordfish Invs., L.L.C.*, 620 S.E.2d

54, 56–57 (S.C. 2005) (noting that a landowner assumes a duty in the context of a landlord-tenant

relationship if the landowner "voluntarily undertakes the act" or if the landlord keeps common areas

on the property).  If Kmart asserted control over the parking lot, the *Bass* balancing test must be

applied to the facts in order to determine whether it had a duty to protect its patrons *outside* of its

store as well.

For the same reasons the Court finds Plaintiffs' have sufficiently disputed the facts material

to the question of Kmart's duty inside its store, the Court finds Plaintiffs have properly placed

Kmart's duty arising from the parking lot in dispute.  Plaintiffs' expert witness testified at his

12

deposition that a security guard in the parking lot would have likely prevented Plaintiffs' injuries from occurring. Wood Depo. 135.  Moreover, in his written report, he indicated that "K-Mart did not provide a reasonable level of security at and around the incident site." Wood Expert Report 5. Given the several incidents that occurred in the parking lot as well as the CRIMECAST offered by Plaintiffs' expert, the Court finds a reasonable jury could find the acts giving rise to this case foreseeable. *Cf. Bass*, 716 S.E.2d at 917 ("The expert based his risk perception at the site primarily upon criminal incident data he gathered from 2000 to 2004, *after* the assault on Petitioner took place." (emphasis added)).  And, stemming from that finding is the question of whether a security guard in the parking lot would be a reasonable measure Kmart would be duty-bound to implement. Accordingly, Plaintiffs have presented sufficient evidence, in light of the scope of duty under *Bass*, to dispute the facts material to their claims of negligence by Kmart.

Finally, the above rulings defeat Kmart's contention that the extent of Plaintiffs' negligence is so great that Plaintiffs' are both barred as a matter of law from claiming that Kmart caused their injuries.  "[A] plaintiff in a negligence action may recover damages if his or her negligence is not greater than that of the defendant." *Nelson v. Concrete Supply Co.*, 399 S.E.2d 783, 784 (S.C. 1991).  In light of sufficient evidence placing into dispute whether Kmart beached a duty and caused injury to each Plaintiff, the Court cannot say the evidence mandates a finding from this Court that Plaintiffs each are more liable than the three Defendants jointly. *See Bloom v. Ravoira*, 529 S.E.2d 710, 713 (S.C. 2000) ("In a comparative negligence case, the trial court should only determine judgment as a matter of law if the sole reasonable inference which may be drawn from the evidence is that the plaintiff's negligence exceeded fifty percent.").  Therefore, Kmart's motion for summary judgment is denied.

### III. Gator's Motion for Summary Judgment

Gator, the owner of the strip mall and parking lot where the accident ultimately occurred, filed a motion for summary judgment, arguing that Plaintiffs presented no evidence to create a reasonable inference that Gator acted negligently or breached any other duty it owed to them. Def. Gator Investors, Inc.'s Mot. for Summ. J., ECF No. 75. Specifically, Gator points to Wood's November 15 expert report, which made no express reference to Gator by name. Memo. in Supp. Def. Gator Investors, Inc.'s Mot. for Summ. J. 3–4, ECF No. 75-1. In their response, Plaintiffs contend that Wood properly supplemented his expert opinions in the written report with his February 12 deposition testimony to account for Gator's negligence. Memo. in Opp. Def. Gator Investors, Inc.'s Mot. for Summ. J. 12–13, ECF No. 87. Gator, however, argued at the hearing that Wood's supplemental opinions are untimely under this Court's scheduling order and thus inadmissible.[3] The Court, therefore, will address the admissibility of Wood's supplemental opinions before turning to the merits of Gator's motion for summary judgment.

### A. Plaintiffs' Expert Witness's Supplemental Opinions are Admissible

Gator, Kmart's landlord, contends that Wood's supplemental opinions, disclosed at his February 12 deposition, are untimely under the scheduling order and therefore must be excluded in considering Gator's motion for summary judgment. Def. Gator Investors, Inc.'s May 13, 2013 Supplemental Br., ECF No. 100. Specifically, Gator first argues Rule 16(b)(4)[4] of the Federal Rules of Civil Procedure requires "good cause" for the production of evidence after the January 30, 2013 discovery deadline. *Id.* at 4–9. Accordingly, Gator, maintaining that Plaintiffs have not shown

---

[3] The Court gave the parties an opportunity to submit supplemental briefs on the issue because it had not been adequately addressed by the parties in their briefs prior to the hearing. ECF No. 99. Both Plaintiffs and Gator filed their supplemental briefs on May 13. ECF Nos. 100, 101.

[4] Rule 16(b)(4) of the Federal Rules of Civil Procedure provide that "[a] schedule may be modified only for good cause and with the judge's consent."

14

good cause, seeks exclusion of the opinions under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure. *Id.* Moreover, Gator argues that Plaintiffs failed to supplement Wood's opinions properly under Rule 26(e) of the Federal Rules of Civil Procedure and that they must be sanctioned pursuant to Rule 37(c)(1). *Id.* at 9–10.

Plaintiffs respond, contending (1) that the supplemental opinions were properly disclosed pursuant to Plaintiffs' duty under Rule 26(e) to supplement their expert's opinions and (2) that, even if the disclosure was untimely, its untimeliness was both substantially justified and harmless to Gator. Pl.'s May 13, 2013 Supplemental Br. 4–7, ECF No. 101. Specifically, they contend that Gator would not be prejudiced because Wood's deposition testimony "is similar to the information in his report . . . [,] only expand[ing] in detail the very opinions [Wood] stated in his initial report by the inclusion of the information obtained from Kmart and the [Myrtle Beach Police Department] incident reports." *Id.* at 7.

First, while Wood's written report did not specifically name Gator (and only mentioned Kmart), the Court agrees with Plaintiffs that a fair reading of Wood's written report suggests that *any* party that controlled the parking lot had a duty to prevent Plaintiffs' injuries from foreseeable criminal activity. Indeed, Wood concluded generally that "K-Mart did not provide a reasonable level of security *at and around the incident site*," Wood Expert Report 5 (emphasis added), and there is no dispute that the "incident site" was the parking lot owned by Gator. Moreover, it is undisputed that Wood received thousands of pages of incident reports after his expert report was issued and before his deposition was taken on February 12. There is no evidence Plaintiffs attempted to withhold the supplemental opinions from Defendants until Wood's deposition. Instead, it only appears that Plaintiffs' counsel knew about the new opinions for only "[a] couple of

days" before the deposition. Wood Depo. 123. "A couple of days," however, does not justify the exclusion of Wood's supplemental opinions from the record and from trial.

Second, the Court finds that Gator's argument under Rule 16 is inapplicable to the supplemental opinions at issue. This Court's scheduling order is plainly applicable to discovery generally, including "discovery requests," "responses thereto," and "motions relating to discovery." Consent Am. Scheduling Order 2, ECF No. 37. An interpretation of the scheduling order as one providing a deadline for providing *supplemental disclosures* as well goes against the grain of Rule 26(e). Certainly, if there was evidence beneficial to Gator, Gator would recognize a duty for Plaintiffs' to supplement their discovery. Therefore, Plaintiffs' disclosure of Wood's supplemental opinions must be analyzed under Rules 26(e) and 37(c)(1).

Regardless, even if the Court agreed with Gator that Wood's supplemental opinions were untimely and improperly disclosed under Rules 26(e) and 37(c)(1), exclusion would still be an inappropriate remedy. First, Plaintiffs' failure appears substantially justified on the ground that several discovery disputes between Plaintiffs and Kmart prolonged Wood's review of all the evidence he needed in order to formulate his opinions. *See S. States Rack & Fixture v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) ("[I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence."). Moreover, the disclosure is harmless to Gator, Kmart's landlord, which, as mentioned above, was on notice that several of Wood's opinions concerned duties arising from the

control of the parking lot which it owned. Wood's written report, which Gator possessed, referred to the incident site and the parking lot. The only prejudice to Gator occurred as a result from its opting to file its motion for summary judgment *before* Wood's deposition.[5] Therefore, Wood's supplemental opinions are admissible and must be a part of the record for the purposes of Gator's motion for summary judgment.

**B. Disputes of Material Facts Require Denial of Summary Judgment**

Given the admissibility of Wood's expert opinions and the other evidence in the record, the Court denies Gator's motion for summary judgment for some of the same reasons it denies Kmart's motion. As noted above, a genuine dispute of material fact exists concerning each Defendants' control of the incident site. The Court need not again go into a discussion about the factual disputes that exist relevant to the scope of the duty of businesses articulated in *Bass*—disputes concerning the foreseeability of the criminal activity, as well as the reasonableness of any precautions Gator should have taken in light of any foreseeable harm (a security guard in the parking lot, for example). Therefore, finding factual questions for the jury, the Court finds no basis to grant summary judgment in Gator's favor as a matter of law.

*IV. Kmart's Motion for Leave to Amend its Answer*

On February 28, 2013, Kmart moved for leave to amend its answer in order to add two cross-claims against Gator.[6] Def. Kmart Corp.'s Mot. to Amend, ECF No. 89. Kmart points to

---

[5] If Gator was concerned it would not have enough time to submit a dispositive motion after Wood's February 12 deposition, it was free to seek an extension of the filing deadline like Kmart did.

[6] The proposed cross-claims allege the following:

**AS A FIRST CAUSE OF ACTION**
(Contractual Indemnity)

evidence that the lease between it and Gator includes an indemnification clause providing that Kmart shall be held "harmless against any and all liabilities for damages for claims arising out of said common areas or Tenant's use thereof, by reason of any act, action, neglect or omission on the part of Landlord and/or Tenant." Lease 8, ECF No. 89-2. Kmart claims that it asserted its rights under the clause, but a defense was rejected. It now seeks indemnification by way of cross-claims. According to Kmart, it "was unaware whether Gator would indemnify and defend Kmart pursuant to the terms of the Lease until after it filed its Answer to Plaintiff's Amended Complaint." Memo. in Supp. Kmart Corp.'s Mot. to Amend 3, ECF No. 89-1. Specifically, Kmart notes it was not until

---

53. The allegations of paragraph 1 through 52 are incorporated herein as if set forth verbatim.

54. The subject store where the incident occurred in this matter is located in a shopping mall originally designed and constructed by Kings Festival Corp., Inc.'s ("Kings"). In 1989, Kings leased a large retail space in this property to Kmart; a copy of this lease is attached hereto and made a part hereof as "Exhibit A." In 2003, Gator Investors, Inc.'s ("Gator") purchased the property from Kings and assumed the lease with Kmart.

As a result of Kings's and Gator's and/or their Subcontractors' acts and/or omissions for which they are responsible and in light of the indemnification provisions of the Lease Agreement to which both Kings and Gator were successive parties, Kmart is entitled to contractual indemnity from Kings and Gator for any loss, damages, costs and/or attorney's fees resulting from the Plaintiff's recovery against it and for defense of this action.

### AS A SECOND CAUSE OF ACTION
(Equitable Indemnity)

55. The allegations of paragraph 1 through 54 are incorporated herein as if set forth verbatim.

56. As a result of the subject incident occurring on premises owned and controlled by Kings and Gator and in light of Plaintiff's expert Howard Woods's testimony, Kmart is entitled to equitable indemnification from Kings and Gator for any loss, damages, costs and/or attorney's fees resulting from the Plaintiff's recovery against it and for defense of this action.

later that Kmart learned "Plaintiffs' expert would render an opinion concerning the sufficiency of the parking lot design or its security." *Id.* at 4.

Both Plaintiffs and Gator responded to the motion.  Plaintiffs consent to the motion "as long as the deadlines in the Sixth Amended Scheduling Order . . . are not extended and the trial of this matter is not delayed." Pls.' Resp. to Kmart Corp.'s Mot. to Amend, ECF No. 92.  Gator, however, objects to the amendment.  It argues that, because the motion was filed after the deadline to amend pleadings, the "good cause" standard under Rule 16(b)(4) must be met. It contends that K-Mart has not satisfied this standard. Def. Gator Investors, Inc.'s Memo. in Opp. to Kmart Corp.'s Mot. to Amend 2–7, ECF No. 91.  Alternatively, Gator argues that Kmart's motion fails under Rule 15(a)(2) of the Federal Rules of Civil Procedure, which requires the Court to "freely give leave when justice so requires." *Id.* at 7.

As an initial matter, there appears to be a dispute between the parties about whether a Rule 15 or a Rule 16 analysis is necessary in deciding this motion.  Kmart relies on Rule 15 while Gator cites Rule 16.  The Court must, therefore, determine when the deadline for amending pleadings was or if there was a controlling deadline in place at the time this motion was filed in February 2013.  A review of this Court's file reveals that the last date contemplated for the amendment of pleadings was May 11, 2011.  That date was first set by the Court in its February 9, 2011 scheduling order. Conference & Scheduling Order 3, ECF No. 7.  When the parties (excluding Gator, which had not yet been added) consented to an amendment of the order on August 8, 2011, they did not change the deadline. Consent Am. Scheduling Order 2.  Nor did the parties change the deadline in the five subsequent consent amended scheduling orders issued since August 2011.  Therefore, the Court finds the deadline for amending pleadings was May 11, 2011.  Despite the fact Kmart later

consented to Plaintiffs' second amended complaint, no party subsequently requested a new deadline for the amendment of pleadings. *See* ECF No. 40.

The existence of a controlling deadline requires the Court to analyze Kmart's motion under Rule 16. "[A]fter the deadlines provided by a scheduling order have passed, the [standard under Rule 16(b)(4)] must be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). The Fourth Circuit based its holding in *Parvizian* on the fact that, "[g]iven their heavy case loads, district courts require the effective case management tools provided by Rule 16." *Id.* Therefore, pursuant to Rule 16(b)(4), a "schedule may be modified only for good cause and with the judge's consent."

Although Kmart's argument is grounded mostly on a Rule 15 analysis, it gives two reasons to show it has good cause to add two cross-claims. First, it argues it has been diligent since September 23, 2011, when it requested that Kings (Gator's predecessor) assume Kmart's defense; however, Kmart never received a response before it filed its answer to Plaintiffs' second amended complaint in October 2011 or before Wood was deposed in February 2013. Reply in Supp. Kmart Corp.'s Mot. to Amend 3, ECF No. 94. Second, it contends as follows:

> During discovery, Kmart learned more about the role of . . . Gator and the plaintiffs' theory of the case, culminating with plaintiffs' experts' deposition on February 12, 2013 in which he opined that the design and operation of the parking lot were factors in the plaintiffs' injuries. This testimony differed from that presented in his earlier report.

*Id.* at 2. Accordingly, it maintains, the good cause standard has been met. The Court disagrees.

The Court finds Kmart's first reason unpersuasive. Kmart was admittedly aware of its potential contractual indemnification claim on September 23, 2011, when it raised the issue of indemnity in a letter it sent to Kings. *See* Sept. 23, 2011 Ltr. to Kings Festival Corp., Inc., ECF No. 94-1. In the letter, Kmart cited the indemnification clause from the lease, arguing that the lease's

"provisions clearly provide that it is the duty and responsibility of Kings to protect K-Mart Corporation from any lawsuit arising out of the parking areas, driveways and streets." *Id.* at 1. Although Kmart blames its failure to add any cross-claims earlier on a lack of a response from Kings, its excuse ignores the necessity for diligence under Rule 16(b)(4).  While waiting a month for a response may not have been unreasonable (for example, holding off on bringing a cross-claim), waiting over a year certainly was.  Kmart may be justified in its failure to include a contractual indemnification claim in its October 26, 2011 answer to Plaintiffs' second amended complaint, but Kmart waited until February 28, 2013 to file this motion.  The Court, therefore, finds no good cause for allowing an amendment to assert a cross-claim for contractual indemnification at this time.[7]

Furthermore, similar grounds prevent the Court from granting Kmart leave to file a cross-claim for equitable indemnification.  The second amended complaint, which brought Gator into this litigation, was filed on October 12, 2011.  In the second amended complaint, Plaintiffs allege that Gator (and its predecessor, Kings) "own[ed] and/or leas[ed] the Kmart store and/or the parking lot" where the incident took place. Second Am. Compl. 2, ECF No. 42.  Plaintiffs also allege that Gator was "in direct control of the premises." *Id.* at 13.  Despite these allegations, Kmart filed its answer to the second amended complaint without a cross-claim against Gator for equitable indemnification.[8]  Approximately sixteen months passed until Kmart finally filed this motion seeking to add its indemnification cross-claims.

To the extent Kmart bases its delay on Wood's opinions, the Court has already found, in allowing Wood's supplemental opinions, that the conclusions in his written report suggest the

---

[7] It is unclear what discovery may be necessary between Gator and Kmart on the cross-claim.

[8] Kmart's argument is also unpersuasive due the fact that, in its September 23 letter, Kmart was seeking a defense and indemnification because it was being sued "for injures that occurred in the parking lot." Sept. 23, 2011 Ltr. to Kings Festival Corp., Inc. 1.

existence of duties arising from the ownership and control of the parking lot outside of Kmart's store. If Kmart was not already on notice of a potential equitable indemnification cross-claim as a result of Plaintiffs' allegations in their second amended complaint, Wood's opinions should have put Kmart even more on notice. Indeed, Wood concluded that there was not a reasonable level of security at the incident site. Any suggestion that Kmart may have been *misled* by Wood's written report, which did not expressly name Gator, is unpersuasive because Kmart was presumably unaware of his opinions between when it filed its answer on October 26, 2011 and when Wood issued his written report on November 15, 2012. By the time Kmart learned of Wood's opinions, Gator had been a party for over a year. Despite the concerns Kmart expressed in its letter, it did nothing during that year to assert a cross-claim for equitable indemnification. Kmart, therefore, is denied leave to amend its answer.[9]

## CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendant Kings Festival Corp. is **DISMISSED** from the case; that Defendant Gator Investors, Inc.'s motion for summary judgment is **DENIED**; that Defendant Kmart Corporation's motion for summary judgment is **DENIED**; and that Defendant Kmart Corporation's motion for leave to amend its answer to Plaintiff's second amended complaint is **DENIED**. In light of the Court's ruling, counsel are directed (1) to mediate this case if they have not done so or (2), if they have mediated it, to contact each other to see if further mediation would be fruitful. The Court is considering calling this action for jury trial during its August Term, for which jury selection will be held August 17, 2013. If the parties need additional time to conduct mediation, they shall notify the Court immediately.

---

[9] The Court notes that its ruling should not be taken as a ruling on the merits of Kmart's rights to indemnification. And, as a judgment in this case has not yet been entered, Kmart is not barred by the South Carolina's applicable statute of limitations. *See First Gen. Servs. of Charleston, Inc. v. Miller*, 445 S.E.2d 446, 449 (S.C. 1994).

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
July 3, 2013